UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD DAVIMOS, JR. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 2:13-CV-00225-GZS |
| | ) | |
| JOHN HALLÉ and | ) | |
| SHARON HALLÉ, | ) | |
| | ) | |
| Defendants | ) | |

## OPPOSITION TO MOTION TO DISMISS COMPLAINT

Plaintiff Richard Davimos, Jr., through his undersigned counsel, submits the following memorandum of law in opposition to Defendants John Hallé and Sharon Hallé's Motion to Dismiss the Complaint pursuant to Rule of Civil Procedure 12(b)(6).

## FACTUAL AND PROCEDURAL BACKGROUND

This is an action in which Plaintiff Richard Davimos, Jr., a creditor of Defendant John Hallé, seeks to recover against Mr. Hallé and his wife, co-Defendant Sharon Hallé, as a result of various fraudulent transfers made by him to her. These transfers are actionable pursuant to the Maine Uniform Fraudulent Transfer Act ("MUFTA"), 14 M.R.S.A. § 3571 et seq. Jurisdiction in this matter is based upon diversity. Plaintiff is a resident of Florida and Defendants reside in Maine. The amount owed is in excess of $2 million.

Plaintiff Davimos' status as a creditor was confirmed in March 2009, when the Supreme Court of the State of New York Appellate Division affirmed entry of the New York Supreme Court's Judgment of September 18, 2008, which awarded Davimos $1

million plus interest from January 7, 2002, until the date of the Judgment in the amount of $582,657.33.

Defendant John Hallé did not appeal the March 2009 ruling.

On March 14, 2013, Plaintiff filed with the Cumberland County Superior Court a certified copy of the New York Judgment pursuant to 14 M.R.S.A. § 8003 (the Uniform Enforcement of Foreign Judgments Act).

In response, Defendant John Hallé filed contemporaneous motions in both Maine and New York to "vacate the New York Judgment."  Defendant John Hallé maintained that there had been some kind of fraud perpetrated on the New York trial court.[1]  This argument was rejected by both the New York trial court and the Maine Superior Court. On May 15, 2013, the New York Supreme Court denied Defendant Hallé's Motion to Vacate, specifically stating:

> Sir, this has been well litigated, well, well litigated and there is nothing that has been brought to this Court's attention that was not known at the time the trial was had that was not known shortly thereafter by Mr. Sullivan, your colleague from New Hampshire; you say you talked to him at length, it's not known to Mr. Sullivan during the course of the trial and certainly could not have been brought to everybody's attention in a post trial memoranda, and any other vehicle that is appropriate at the time of the trial. **So, your motion to vacate the decision is denied and that constitutes the decision and order of the Court.** (Emphasis added.)

(Transcript, p. 25, attached as Exhibit A.)

Similarly, the Maine Superior Court denied Defendant's Motion to Vacate, noting:

---

[1] The nature of the alleged fraud has never been made clear by Defendant Hallé in his pleadings, but has something to do with the contents of a lawyer's billing records that Mr. Hallé had in his possession, per his affidavit filed with the Maine and New York Courts, since 2000 some eight years before the New York trial occurred.  Mr. Hallé's interpretation of the significance of the billing records is hearsay and he has offered no admissible evidence to substantiate his claims of fraud.

In the case at bar, not only is the alleged fraud intrinsic fraud, but also
Halle had in his possession at the time of trial the documents he now says
would prove the alleged falsity of Davimos's testimony.  Halle's attempt
to relitigate the veracity of Davimos's testimony based on evidence that
was in Halle's possession at the time of trial is beyond the permissible
bounds of a Rule 60(b) motion.  "Discrediting witnesses does not
generally justify an extraordinary second opportunity . . . . Rule 60(b) does
not license a party to relitigate . . . any issues that were made or open to
litigation in the former action where he had a fair opportunity to make his
claim or defense."

(See Order of July 3, 2013, attached as Exhibit B to Affidavit of Margaret Minister

O'Keefe, Esq.)

Defendant Hallé now seeks to dismiss this action, arguing that Counts I and II of

the Complaint are not pleaded with sufficient specificity and that Count III is barred by

the applicable statute of limitations.  For the reasons set forth below, Defendants' Motion

should be denied.

**ARGUMENT**

## I.    THE ALLEGATIONS OF COUNTS I AND II OF THE COMPLAINT SATISFY THE "PLAUSIBILITY STANDARD" FOR FEDERAL PLEADINGS

Counts I and II of the Complaint allege fraudulent transfers from Defendant John

Hallé to Defendant Sharon Hallé involving membership interest in two limited liability

companies.  In their Motion to Dismiss, Defendants argue that Counts I and II do not

contain sufficient factual matter on each element to state a claim for relief.  The argument

is without merit.

Two Supreme Court cases from 2007 and 2009 ushered in a more stringent

pleading standard in the federal courts.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Under the old standard, a party moving

for dismissal of a complaint needed to show "beyond a doubt that the plaintiff can prove

3

no set of facts in support of his claim [that] would entitle him to relief."  2-12 *Moore's Federal Practice – Civil* § 12.34.  This "no set of facts" standard has been replaced.  Now, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'"  *Id.* (*Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678) (emphasis added).

In *Iqbal*, *supra*, the Supreme Court noted:

> As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Iqbal*, 556 U.S. at 678 (internal quotations omitted).

The Court further noted:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal quotations omitted).

The First Circuit, quoting *Iqbal*, noted that application of the plausibility standard "requires the reviewing court to draw on its judicial experience and common sense."  *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013).  A trial court does this by using the following two-step process:

> First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must

> consider whether the winnowed residue of factual allegations gives rise to
> a plausible claim to relief. If the factual allegations in the complaint are
> too meager, vague, or conclusory to remove the possibility of relief from
> the realm of mere conjecture, the complaint is open to dismissal.

*Id.* (internal quotations omitted).

The Complaint in this case should be evaluated under the plausibility standard and also through the pleading requirements for fraudulent transfers based on actual intent.  While the First Circuit has not held that Rule 9(b) applies to UFTA (and it is an open question in several circuits, *Janvey Alguire*, 846 F.Supp.2d 662, 676 (N.D. Tex. 2011)), federal trial courts in the First Circuit have held that fraudulent transfers based on actual intent under UFTA, as Counts I and II are, and the Bankruptcy Code (Title 11 of the United States Code), must meet the heightened pleading requirements of Rule 9(b).  *E.g., Lugo-Mender v. Equus Entertainment Corp. (In re El Comandante Mgmt. Co., LLC)*, 338 B.R. 469, 473 (D.P.R. 2008) (applying Fed. R. Civ. P. 9(b) to fraudulent transfer claim under § 548 of the Bankruptcy Code); *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 673 (D.R.I. 1998) (applying Fed. R. Civ. P. 9(b) to UFTA claim).  (Claims of constructive fraudulent transfers may not need to meet Rule 9(b)'s standard.  *Off. Comm. of Unsecured Creditors v. Foss, et al. (In re Felt Manufacturing Co. Inc.)*, 371 B.R. 589, 637 n.13 (Bankr. D. N.H. 2007).)

Rule 9(b) states as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally*."  Fed. R. Civ. P. 9(b) (emphasis added).  This rule serves three functions:

> (1) Enabling defendants to identify the allegedly fraudulent behavior in
> order to mount a defense with regard to those actions; (2) protecting
> defendants by prohibiting a complainant from making character-damaging

allegations that have no basis in provable fact; and (3) reducing the
number of strike suits.

*Flannigan v. Vulcan Power Group, L.L.C.*, 712 F.supp.2d 63, 68 (S.D.N.Y. 2010).  As a

result, it should come as no surprise that this standard is flexible based on whether the

defendant has exclusive control of necessary information:

> Otherwise, defrauders might be rewarded for successfully concealing the
> details of their fraud.  Nevertheless, even when the defendant retains
> control over necessary information, boilerplate and conclusory allegations
> will not suffice. Plaintiffs must still provide factual allegations that make
> their claim plausible.

2-9 *Moore's Federal Practice – Civil* § 9.03 (*citing, in part, In re Rockefeller Ctr.*

*Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2003) ("Where it can be shown that

the requisite factual information is peculiarly within the defendant's knowledge or

control, the rigid requirements of Rule 9(b) may be relaxed."); *U.S. v. Baxter*

*Int'l, Inc.*, 345 F.3d 866, 880-85 (11th Cir. 2003) (district court erred in dismissing

case for failure to state claim with sufficient particularity when necessary

information was under control of defendants)).

Courts have relaxed Rule 9(b)'s standard and denied motions to dismiss

fraudulent transfer claims under such circumstances.  For example, in *Sunrise Indus.*

*Joint Venture v. Ditric Optics, Inc.*, 873 F.Supp. 765, 772-73 (E.D. N.Y. 1995), the Court

denied a motion to dismiss and relaxed the pleading standards of Rule 9(b) because the

particulars of the fraud claim were peculiarly within the knowledge of the defendants.

*Id.* (*citing*, *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2nd Cir. 1986)).  "Although the

complaint fails to plead the fraudulent conveyance with the particularity required by Rule

9(b), it is the court's view that defendant's motion must be denied because the particular

facts surrounding the transactions are within the knowledge of the defendants."  873

6

F.Supp. at 772.  Apparently mindful of the policies underling Rule 9(b), the court

reasoned that "the plaintiff has alleged enough facts to put Signal on notice that the

transactions involving the sale of Ditric's assets and the subsequent conveyance of the

proceeds . . . are being challenged as fraudulent."  *Id.*

      Defendants argue that Counts I and II do not have sufficient detail related to the

transfers and Hallé's intent.  Defendants rely on the case of *LG Electronics U.S.A. v.*

*Whirlpool Corp.*, No.8-24 (GMS), 2009 WL 3738306, at *1 (D.Del. Nov. 9, 2009) for the

proposition that "'sufficient detail includes name, date, amount, circumstances, and

transferee'".  (Defendants' Motion, p. 7.)  The *LG Electronics* case does not include this

quote, nor does the case that Defendants claim it cites to.  To the extent that the

proposition is correct, the case of *In re El Comandante Mgmt. Co. LLC*, 388 B.R. 469,

473 (D. P.R. 2008), a post-*Twombly* case, is instructive.  In *El Commandante*, the court

held that allegations of date, place and time certainly fulfill the heightened pleading

requirement, but noted that nothing in the rule requires them.  388 B.R. at 473.   The

court observed, "the particularity requirement of Rule 9(b) is satisfied if the fraudulent

transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are

fraudulent, and the roles of the defendants in the transfers."  *Id.*

      Similarly, in this case, Count I alleges that:  (1) in February 2007, JH North

Hampton Company, LLC was formed; (2) one of its members or its sole member was

John Hallé; (3) the LLC's purpose was to hold and own an aircraft; (4) at some point

between December 31, 2009 and December 31, 2010, Defendant John Hallé transferred

his membership interest to Sharon Hallé; (5) the transfer was made with actual intent to

hinder, delay or defraud the Plaintiff Richard Davimos; (6) at the time of transfer Sharon

Hallé was an insider as defined by the Uniform Fraudulent Transfer Act; (7) John Hallé retained possession or control of his membership interest after the transfer; and (8) prior to the transfer being made, Defendant John Hallé had been sued by Plaintiff Richard Davimos and judgment entered against him.  (Complaint, ¶¶ 11, 27, 29 and 30.)

Count II alleges that:  (1) on December 13, 2006, Jenis Holding Company, LLC was formed as a limited liability company; (2) on November 2, 2007, Jenis Holding Company, LLC filed an application for registration as a foreign limited liability company in the State of New Hampshire and Defendant John Hallé signed the application for registration as a "member" of Jenis Holding Company, LLC; (3) in June 2011, Sharon Hallé signed an affidavit on behalf of Jenis Holding Company, LLC stating, "John Hallé has no membership interest in the LLC in his, a trade name, corporate name or in association with others"; (4) in March 2012, Jenis Holding Company, LLC filed articles of dissolution in the State of Florida with "consent" of its "member" Sharon Hallé; (5) at some point subsequent to November 2007, Defendant John Hallé transferred his membership interest in Jenis Holding Company, LLC to Defendant Sharon Hallé; (6) at the time of the transfer of John Hallé's membership interest in Jenis Holding Company, LLC to Defendant Sharon Hallé, Defendant John Hallé was a debtor of Plaintiff Richard Davimos; (7) Defendant John Hallé transferred his membership interest in Jenis Holding Company, LLC with actual intent to hinder, delay and/or defraud Plaintiff Richard Davimos; (8) at the time of the transfer of John Hallé's membership in Jenis Holding Company, LLC to Defendant Sharon Hallé, Sharon Hallé was an insider as defined by the Uniform Fraudulent Transfer Act; (9) Defendant John Hallé retained possession or control of the membership interest after the transfer; and (10) prior to the transfer being

made, Defendant John Hallé had been sued by Plaintiff Richard Davimos in the Davimos-Hallé Litigation.  (Complaint, ¶¶ 12, 13, 14, 15, 34, 35, 36 and 37.)

The foregoing clearly refutes Defendants' argument that the Complaint is without sufficient factual detail, but there is more.With respect to the sufficiency of allegations of intent, Rule 9(b) as noted above, does not require particularity on this element.  In the case of *Skyline Potato Co., Inc. v. Tan-O-On Marketing, Inc.*, 879 F.Supp.2d 1228 (2012) the court held that the counterclaim plaintiff had adequately pleaded a claim under UFTA by relying on badges of fraud to show intent.  *Id.* at 1263.  Quoting the Second Circuit, the court noted that "due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."  *Id.*

Plaintiff has pled Counts I and II with sufficient particularity to state fraudulent transfer claims for relief that are plausible on its face.  Rule 9(b) permits Plaintiff to plead matters of intent generally, and here Plaintiff has adequately plead several badges of fraud as indicia of the Defendants' actual intent.  (Complaint at ¶¶ 28, 30, 35, and 37.) As a result, Defendants' Motion to Dismiss Counts I and II should be denied.

## II.    COUNT III IS NOT BARRED BY THE STATUTE OF LIMITATIONS

The Defendants erroneously contend that Count III is time-barred under 14 M.R.S.A. § 3580(1).  As discussed below, the Defendants' argument is based on a misapplication of relevant law and gains no support from the facts alleged in the Complaint or other allowable sources of information for the Court to consider at this stage of the proceedings.

9

To begin with, this Court may only adjudicate a properly raised affirmative defense, such as a statute of limitations, on a motion to dismiss, if "(i) the facts establishing the defense are *definitively* ascertainable from the complaint and the other allowable sources of information, and (ii) *those facts* suffice to establish the affirmative defense with *certitude*." *Rodi v. S. N.E. Sch. Of Law*, 389 F.3d 5, 12 (1st Cir. 2004) (emphasis added). Allowable sources of information include facts alleged in the complaint, documents attached thereto or incorporated by reference therein (if any) the authenticity of which has not been challenged, and matters that may be judicially noticed. *Id.* "However, [the Court] may not consider at this stage the array of affidavits and miscellaneous other documents proffered by the parties." *Id.*

Turning to the substance of MUFTA, § 3580(1) provides that Davimos' claim under Count III would be "extinguished" unless this action was brought "within 6 years after the transfer was made or the obligation was incurred, or if later, within one year after the transfer or obligation was or could reasonably have been discovered by [Davimos]." 14 M.R.S.A. § 3580(1). Official commentary to Maine's enactment of this provision makes clear that § 3580(1) is simply a codification of Maine's common law statute of limitations coupled with a one-year discovery rule for claims under MUFTA involving actual intent to defraud creditors (and differs from UFTA only insofar as it retained Maine's six-year statute of limitations rather than a shorter limitations period suggested by the Uniform Law Commissioners when promulgating UFTA). *See* 14 M.R.S.A. § 3580 Me. Cmt. 1.

Analysis under § 3580(1) is not merely focused on the date of the transfer or when such transfer was or could reasonably have been known by Davimos, but rather the

inquiry is into when Davimos knew or reasonably should have known of the fraudulent

nature of the transfer.  Hence, official commentary to § 3580 states that "when actual

intent to defraud is involved, subsection (1) allows an additional period of one year from

the date the *fraudulent* transfer was or reasonably could have been discovered."  14

M.R.S.A. § 3580 Me. Cmt. 1 (emphasis added).  This is the holding of a relevant, pre-

MUFTA fraudulent conveyance case in Maine that will be discussed below, *Westman v.

Armitage*, 215 A.2d 919 (Me. 1966), and the majority view of those cases decided under

UFTA, *State Farm Mut. Auto. Ins. Co. v. Cordua*, 834 F.Supp.2d 301, 307 (E.D. Pa.

2011) ("[T]he majority of other jurisdictions have consistently held that the one-year

savings provision does not begin to accrue until the creditor discovers or could have

reasonably discovered the nature of the fraudulent transfer" and not merely the fact that

the transfer occurred.).[2]  (Cases outside of Maine are important to this Court's analysis in

---

[2]      In support of this statement, the *Cordua* Court collected the following authorities:

> *See Freitag v. McGhie,* 133 Wash.2d 816, 947 P.2d 1186, 1190 (Wash.1997) (holding
> that UFTA's one-year savings provision provides a "one-year period from the date of
> discovery of the fraudulent nature of the transfer within which to initiate a claim under
> UFTA."); *Duran v. E.G. Henderson,* 71 S.W.3d 833, 839 (Tex.App.2002) (rehearing
> overruled) (holding that "[a] creditor's cause of action to set aside a fraudulent
> conveyance accrues[, and thus the limitation period does not begin to run, until] the
> creditor acquires knowledge of the fraud, or would have acquired knowledge of the fraud
> in the exercise of ordinary care.") (citation omitted); *Rappleye v. Rappleye,* 99 P.3d 348,
> 356, 2004 UT App 290 (Utah Ct.App.2004) (holding UFTA incorporates a fraudulent
> discovery rule within the one-year savings provision, and as such, the limitations period
> is determined by the date on which the creditor was "on notice that the conveyance was
> fraudulent"); *In re Sw. Supermarkets, L.L.C.,* 315 B.R. 565, 577 (Bankr.D.Ariz.2004)
> (holding actual fraudulent conveyance claims brought later than four years after the
> transaction must be brought within one year of when the creditor knew or, with
> reasonable diligence, should have known of the existence of the cause of action); *In re
> Bushey,* 210 B.R. 95, 99 n. 5 (B.A.P. 6th Cir.1997) (noting that "because Ohio applies a
> discovery-of-the-fraud rule" to the state's UFTA, a cause of action for a fraudulent
> transfer was not barred by the extinguishment clause where the action was brought one
> year after discovery of the fraudulent conduct); *Fidelity Nat'l Title Ins. Co. of N.Y. v.
> Howard Sav. Bank,* 436 F.3d 836, 839 (7th Cir.2006) (noting UFTA's limitations period
> under the one-year savings provision does not begin to run until "discovery that the
> plaintiff has been wrongfully injured.") (citation omitted).

*State Farm Mut. Auto. Ins. Co.*, 834 F.Supp.2d at 307.

light of 14 M.R.S.A. §3583, which codified the Legislature's policy decision that MUFTA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it.")

Because the Complaint and other allowable sources of information do not contain *any* allegation of the date on which Davimos discovered the fraudulent transfer of 106 Woodlands Drive, Falmouth, Maine (the "Property"), however, the Defendants can only prevail if there are facts in the Complaint (and other allowable sources of information) showing that Davimos reasonably could have discovered the fraudulent nature of the transfer within one year of the date that this action was commenced. The Defendants advance two arguments in this regard—neither of which has any merit. First, the Defendants have suggested that Sharon Hallé was subject to discovery served by Davimos in a separate action in June 2011 and that this meant that the fraudulent nature of the transfer of the Property could reasonably have been discovered at that time. The Complaint does not contain any allegation that Sharon Hallé was served with discovery in any matter, let alone a separate matter involving these parties, and the Defendants offer no law to support the outlandish idea that by virtue of having one dispute pending between two parties the facts to any and all potential disputes reasonably could be known at the same time (or would be relevant to discovery in the initial case). To the extent that the Defendants direct this Court's attention to a letter purportedly from an attorney of Plaintiff to demonstrate that Sharon Hallé had been served with discovery in June 2011, it is not proper for this Court to consider such unauthenticated hearsay at this stage of the proceedings. *Rodi*, 389 F.3d at 12; 2-12 *Moore's Federal Practice – Civil* § 12.34[2]. *See also* Fed. R. Evid. 802.

12

Second, the Defendants argue that the mere fact that a deed transferring the Property from John Hallé to Sharon Hallé was recorded in the Cumberland County Registry of Deeds means that Davimos could have discovered the fraudulent transfer at any time after recordation of such deed. The Law Court soundly rejected this proposition in *Westman*, *supra*. In *Westman*, the complaint "disclose[d] no more than that the deed now alleged to have been given in fraud of creditors was duly recorded in the registry of deeds. The complaint does not inform us when it was so recorded. Nor is it apparent from the pleadings that the deed was not fair on its face or not purportedly given for a fair consideration." *Id*. While the Law Court noted "after purchasers of the same grantor" may be on constructive notice of the prior transfer, that does not put a creditor on notice either (1) that such transfer having occurred, or (2) that such transfer was fraudulent. *Id*. The Law Court reasoned as follows:

> [I]t would not suffice to charge the plaintiff with constructive notice merely *that a conveyance was given*. The statute of limitations would start to run only if recordation gave constructive notice of the *fraud*. Although the authorities are divided (Anno. 100 A.L.R.2d 1094; 133 A.L.R. 1311; 76 A.L.R. 864 and cases cited), the majority and what seems to us the better reasoned view appears to be that recordation of a fraudulent conveyance will not alone suffice to give constructive notice of the fraud such as will start the running of the statute of limitations.

*Id*. Thus, the Law Court reversed the trial court's entry of judgment on the pleadings.

It is worth noting that nothing on the face of the Warranty Deed in this case (Exhibit C to the Affidavit of Margaret Minister O'Keefe, Esq.) would have alerted a reasonable person either to the *fraudulent* nature of the transfer or that there was, in fact, no consideration. The Warranty Deed actually states that the Defendants transferred the Property to Sharon Hallé "for consideration paid[.]" It does not include any notation that no transfer tax was paid. Typically, a deed will include such a notation if no tax was

paid.  It is only by searching for the applicable real estate transfer tax form, as referenced in paragraph 17 of the Complaint, that one can learn that no consideration was in fact paid for the transfer.

While *Westman* was decided before the Legislature enacted MUFTA, it is instructive here.  Section 3581 of MUFTA states that "[u]nless displaced by the provisions of this Act, the principles of law and equity, including . . . the law relating to . . . fraud . . . supplement its provisions."  The Supreme Court of Washington relied on this same provision to hold, in accordance with that state's pre-UFTA decisional law, that UFTA's "statute of limitations does not begin to run until all the elements of the cause of action for fraud are discovered or should have been discovered[,]" *i.e.*, including not merely that a transfer has occurred but discovery of "the fraudulent nature of a transfer[.]"  *Freitag v. McGhie*, 947 P.2d 1186, 1190-91 (Wash. 1997) (*en banc*), *supra* n.2.  Notably, the *Freitag* Court reached this conclusion on facts similar to the case presently before the Court (a deed transferring title to an insider was recorded without any apparent indication of fraud on the deed itself).

> To rule otherwise would be to rule in complete derogation of the UFTA itself.  The UFTA, as we have said, discourages fraud.  If the statute were to begin to run when the transfer was made, without regard as to whether the claimant discovered or could have discovered the fraudulent nature of the transfer, those successful at concealing a fraudulent transfer would be rewarded.  In this case, for instance, nothing on the instrument itself indicated a fraudulent transfer

*Id.* at 1190.

The First Circuit has acknowledged the correctness of the reasoning in *Freitag* with respect to UFTA's purpose.  *Fleet Nat'l Bank v. Valente*, 360 F.3d 256, 262 (1st Cir. 2004) (*citing Freitag* for "observing that the purpose of UFTA

was to 'discourage[e] fraud' and that 'within the UFTA itself lies a mandate to apply the common law to the extent it is not inconsistent with the provisions of the act[.]'").

For all these reasons Count III of the Complaint is not barred by the statute of limitations.

## CONCLUSION

The allegations contained in Counts I and II state claims for recovery under MUFTA that are plausible on their face. Count III is not barred by the statute of limitations. As a result, Defendants' Motion to Dismiss should be denied.

Dated at Portland, Maine this 6th day of August, 2013.

/s/ Lee H. Bals
Lee H. Bals, Bar No. 3412

Counsel for Plaintiff Richard Davimos, Jr.

MARCUS, CLEGG & MISTRETTA, P.A.
One Canal Plaza, Suite 600
Portland, ME  04101
(207) 828-8000

## CERTIFICATE OF SERVICE

I, Karen A. Stone, hereby certify that I am over eighteen years old and caused a true and correct copy of the above document to be served upon the parties on the below ECF Mail Notice List electronically on the 6th day of August, 2013.

/s/ Karen A. Stone
Karen A. Stone
Paralegal

# Mailing Information for a Case 2:13-cv-00225-GZS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **LEE H. BALS**
  lbals@mcm-law.com,kstone@mcm-law.com,federalcourt@mcm-law.com
- **MARGARET MINISTER O'KEEFE**
  mokeefe@pierceatwood.com,svillanueva@pierceatwood.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)