UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD DAVIMOS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Docket no. 1:13-cv-225-GZS |
| ) | |
| JOHN HALLÉ and ) | |
| SHARON HALLÉ, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendant John Hallé and Sharon Hallé's Motion to Dismiss (ECF No. 5), which seeks dismissal of Plaintiff Richard Davimos, Jr.'s Complaint based on Federal Rule of Civil Procedure 12(b)(6). For reasons explained herein, the Court DENIES the Motion.

**I.   STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction… a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). The Court assumes the truth of the Complaint's well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Under 12(b)(6), the Court "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl.Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011)(internal citations omitted). However, "when a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it." Id.

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  As such, plaintiffs must include enough facts supporting a claim for relief that "nudg[e] their claims across the line from conceivable to plausible." Id.  In considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to an assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Rule 9(b)'s heightened pleading requirements act as an exception to the general rule of pleading outlined above. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004); Enercon v. Global Computer Supplies, Inc., 675 F. Supp. 2d 188, 190-191 (D. Me. 2009).  The heightened pleading requirement serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit;' and (3) to safeguard defendants from frivolous charges which might damage their reputations." Id. (citing New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987)).  However, Rule 9(b) does not exist in a vacuum and should be read in harmony with Rule 8's pleading requirements. See Zahn v. Yucaipa Capital Fund, 218 B.R. 656, 673 (D.R.I. 1998).

## II. BACKGROUND

This dispute is before the Court based on diversity jurisdiction: Plaintiff Richard Davimos, Jr. ("Davimos") is an individual residing in the state of Florida and he brings a claim

for over $75,000.00 against Defendants Mr. and Mrs. John and Sharon Hallé ("the Hallés"), two individuals residing in the state of Maine. In his Complaint, Davimos seeks both equitable relief and monetary damages, claiming the Hallés violated the Maine Uniform Fraudulent Transfer Act when they transferred certain assets in an attempt to evade Davimos's enforcement of a judgment issued by the State of New York.  These claims arise out of an action Davimos brought in the Supreme Court of the State of New York against the Hallés seeking $1,000,000.00 pursuant to a guaranty given to him by John Hallé. (Compl. (ECF No. 1) ¶¶ 4, 5.)  That litigation began in January 2002 and ostensibly ended in March 2009 when the Appellate Division of the Supreme Court of the State of New York affirmed the lower Court's entry of judgment in the amount of $1,000,000.00 plus $582,657.33 in interest. (Id. ¶ 9, 10.)

In Count I of his Complaint, Davimos claims that at some time between December 31, 2009 and December 31, 2010, John Hallé fraudulently transferred his membership interest in JH North Hampton Group, LLC to Sharon Hallé. (See id. ¶¶ 26-31.)  Specifically, Davimos states that John Hallé was either one of JH North Hampton Group, LLC's members or its sole member. (Id. ¶ 11.) JH North Hampton Group, LLC owned an aircraft by way of a membership interest in a limited liability company named N7OKC, LLC. (Id.)

In Count II, Davimos claims John Hallé fraudulently transferred his membership interest in Jenis Holding Company, LLC to Sharon Hallé. (See id. ¶¶ 32-38.)   The timing as to Count II is not entirely clear; Davimos alleges that the alleged fraudulent transfer occurred at some time after November 2007. (See id. ¶ 34.)  In any event, the transfer could have occurred no later than Jenis Holding Company, LLC's dissolution in March 2012. (Id. ¶ 15.)  Although Davimos

3

references Jenis Investment Company, LLC[1], the Court's review of his Complaint does not indicate how, if at all, that entity is related to Jenis Holding Company, LLC.

Finally, in Count III Davimos claims John Hallé fraudulently transferred his interest in real estate located at 106 Woodlands Drive, Falmouth, Maine to Sharon Hallé, (see id. ¶¶ 39-44.) Specifically, Davimos states that on September 15, 2005, John Hallé transferred the Falmouth property to Sharon Hallé for "no consideration" as evidenced by the Maine Revenue Services Real Estate Transfer Tax Declaration associated with the transaction. (Id. ¶ 17.) Davimos claims Sharon Hallé later sold the Falmouth property and with its proceeds bought real estate located at 16 Hunter Point Drive in Scarborough, Maine. (See id. at ¶¶ 18, 19.)

## III.  DISCUSSION

In their Motion to Dismiss, the Hallés claim that Count III should be dismissed because it is untimely under 14 M.R.S.A. 3580(1) and that the allegations contained in Counts I and II are not stated with sufficient particularity such that they fail Rule 12(b)(6)'s requirements. The Court addresses each argument in turn.

### A.  Count III: The Falmouth Property

The Hallés contend that Count III of Davimos's Complaint must be dismissed because the operative event occurred in 2005. As such, the Hallés argue this claim is untimely under 14 M.R.S.A. § 3580's six-year statute of limitations *and* its one year discovery exception. (Defs. Mot. to Dismiss (ECF No. 5) at 4.) To that end, the Hallés argue that Davimos reasonably could have discovered the fraudulent transfer no later than June 2011. (See id. at 4.) The Hallés cite discovery sought by Davimos in the abovementioned New York state court litigation concerning Mr. Hallé, Mrs. Hallé, Jenis Holding Company, LLC, and Jenis Investment Company, LLC,

---

[1] Davimos avers that Jenis Investment Company, LLC was previously known as Plymouth Wharf Holdings, LLC from March 2006 to August 2008, (see id. at ¶ 23), and as SuiteLink Acceptance Company, LLC since the entity's formation in April 2005 to March 2006. (See id. at ¶ 21.)

claiming Mrs. Hallé "was known to Davimos and was a clear target of [his] discovery efforts in New York more than one year prior to the filing of this action." (Id. at 5.) As such, the Hallés believe Davimos could have reasonably discovered the transfer to Mrs. Hallé "at or around the time [he] was seeking discovery from her, i.e. in or about June 2011." (Id. at 4). Moreover, the Hallés contend that Davimos should have performed some sort of asset search rather than wait "nearly five years post-judgment to determine what assets might be available to satisfy the New York Judgment." (Id. at 5.) If Davimos had done so, he would have discovered that the "transfer at issue was recorded in the Cumberland County Register of Deeds on September 23, 2005." (Id. at 6.) In any event, the Hallés argue that Mr. Hallé's nonpayment[2] since the New York judgment was entered, together with the discovery sought of Mrs. Hallé and the transfer recordation, preclude Davimos from recovering on Count III. Davimos responds that "Defendants offer no law to support the outlandish idea that by virtue of having one dispute pending between two parties the facts to any and all potential disputes reasonably could be known at the same time (or would be relevant to discovery in the initial case)." (Pl. Response (ECF No. 6) at 12.) Likewise, Davimos argues nothing on the face of the Warranty Deed would have alerted a reasonable person either to the fraudulent nature of the transfer or that there was no consideration given. Id. at 13. To that end, Davimos claims that it was "only by searching for the applicable real estate tax form, as referenced in paragraph 17 of the Complaint, that one can learn that no consideration was in fact paid for the transfer." Id. at 14.

Under the provisions of the Maine Uniform Fraudulent Transfer Act ("UFTA"), a transfer may be defined as fraudulent if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor *or* did so without receiving a reasonably equivalent

---

[2] The Court notes that in their Reply, the Hallés explicitly disavow this statement, clarifying that "Mr. Hallé had been paying the annual amounts [of the New York Judgment] required under New York law." (Defs. Reply (ECF No. 7) at 1 n.1.)

value in exchange for the transfer while the debtor was insolvent at the time. 14 M.R.S.A § 3575. Normally, a claim is extinguished if it is not brought within six years after the fraudulent transfer occurred. See 14 M.R.S.A. § 3580(1). However, fraudulent transfer claims brought under section 3575(1)(a) – that is, "intent to defraud" claims – may be brought "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Id.

"It is well-established that affirmative defenses… may be raised in a motion to dismiss an action for failure to state a claim." Cordero Jimenez v. Univ. of Puerto Rico, 371 F. Supp. 2d 71 (D.P.R. 2005) (citing Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)). However, a complaint will not be dismissed as time-barred pursuant to Rule 12(b)(6) unless the complaint "contains within its four corners allegations of sufficient facts to show the existence and applicability of the defense." Capozza Tile Co. v. Joy, 2001 U.S. Dist. LEXIS 14447 (D. Me. Sept. 13, 2001) (citing Francis v. Stinson, 2000 ME 173, 760 A.2d 209, 220 (Me. 2000)); see also LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)("In the case of the affirmative defense of statute of limitations, dismissal is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time barred.").

It is this Court's determination that the allegations set forth in Davimos's Complaint do not resolve the question of when he knew or reasonable could have discovered the fraudulent nature of the Falmouth property transfer. Accordingly, at this stage in the litigation it would be improper to dismiss the action for being untimely. In his Complaint, Davimos states that "[o]n September 15, 2005, Defendants John Hallé and Sharon Hallé transferred the real estate located at 106 Woodlands Drive, Falmouth, Maine to Sharon Hallé for 'no consideration,' as evidenced on the Maine Revenue Services Real Estate Transfer Tax Declaration pertaining to the transaction." (Compl. at ¶ 17.) Notably, Davimos does not indicate *when* he discovered this

information.  The Court cannot cross the logical bridge the Hallés attempt to construct: that is, Davimos's references[3] to an affidavit made by Sharon Hallé concerning John Hallé's lack of membership interest in Jenis Holding Company, LLC and Jenis Investment Company, LLC necessarily imputes his knowledge of the September 15, 2005 property transfer.  Likewise, the Court finds the decision in Westman v. Armitage instructive, where the Law Court found that recordation of a fraudulent conveyance is "merely one circumstance bearing on the creditor's actual or presumed knowledge," Westman v. Armitage, 215 A.2d 919, 922 (Me. 1966), and that recordation alone was insufficient "to give constructive notice of the fraud such as will start the running of the statute of limitations." Id.  The Westman rule underscores the premise that creditors are "not required to periodically search the registry of deeds 'if no circumstance has transpired which should put him on inquiry.'" Kobritz v. Severance, 912 A.2d 1237, 1241 (Me. 2007).  Simply put, on the record now before the Court, there are no facts which indicate either when Davimos knew of or should have inquired about the transfer of the Falmouth property.  As such, the Hallés' Motion to Dismiss based on the statute of limitations is denied as to Count III.

### B. Counts I and II: Mr. Hallé's membership interest in JH North Hampton LLC and Jenis Holding Company, LLC

The Hallés next maintain that Counts I and II should be dismissed because they lack necessary factual allegations about the underlying transfers and the issue of intent.  The Hallés argue that Davimos's Complaint merely parrots the elements of 14 M.R.S.A. § 3575 and should be dismissed for failing to adhere to the pleading requirements as set forth by the Supreme Court in Twombly and Iqbal.  As to Count I, the Hallés contend Davimos fails to include sufficient detail such as the "name, date, amount, circumstances, and transferee," (Defs. Mot. to Dismiss at 7), or John Hallé's actual intent to defraud Davimos. See id. at 8.  Similarly, the Hallés assert

---

[3] (See Comp. at ¶¶ 14, 25)

Count II is "wholly lacking in sufficient detail, such as the date, amount, and circumstances of the transfer… [or] factual allegations of actual intent to hinder, delay, and/or defraud Davimos." (Id. at 9); (internal quotations omitted.)  Davimos responds that he has appropriately pleaded both the circumstances surrounding the transfers and Hallé's actual intent alleged in Counts I and II under both Rule 8 and Rule 9(b)'s pleading standards.  Nevertheless, Davimos proposes that Rule 9(b) should be relaxed because the particulars of his fraud claims are peculiarly within Defendants' knowledge. (See Pl. Response at 6).

      The Court will not try this case on a motion to dismiss.  A probing inquiry into the precise dates of the fraudulent transfers and the specific assets which John Hallé held by virtue of his membership interests in JH North Hampton Group, LLC and Jenis Holding Company, LLC at the time of the fraudulent transfers is inappropriate at this juncture.  It is this Court's determination that Davimos's Complaint clearly satisfies the requirements of Rules 8 and 9(b).  As to Count I, the Complaint alleges that John Hallé transferred his membership interest in JH North Hampton Group, LLC to Sharon Hallé at some point between December 31, 2009 and December 31, 2010. (See Compl. ¶¶ 27, 30.)  Second, the Complaint indicates that JH North Hampton Group, LLC owned an aircraft by way of a membership interest in a limited liability company named N7OKC, LLC. (See id. ¶ 11.)  Third, the Complaint plausibly characterizes this was a fraudulent transfer, given the allegations that prior to the transfer, Davimos sued John Hallé in the above-referenced New York state court litigation, that Sharon Hallé was an "insider," and that John Hallé retained possession or control of the membership interest after the transfer. (See id. ¶ 30.)

      As to Count II, the Complaint alleges that John Hallé transferred an asset − that is, his membership interest in Jenis Holding Company, LLC − to Sharon Hallé at some point between

November 2007 and March 2012. (See id. ¶¶ 34, 15.)  The Complaint plausibly characterizes this was a fraudulent transfer, given the allegations that prior to the transfer, Davimos sued John Hallé in the New York state court litigation, that Sharon Hallé was an "insider," and that John Hallé retained possession or control of the membership interest after the transfer. (See id. ¶ 37.) Of course, the Hallés may have colorable arguments concerning the applicability of the discovery exception to UFTA's six year statute of limitations or whether John Hallé had the requisite actual intent to defraud, hinder, or delay Davimos.  However, it is not this Court's place to resolve such fact-sensitive questions in the context of a Rule 12(b)(6) motion for dismissal.

## IV.   CONCLUSION

For the aforementioned reasons, the Court DENIES Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 5).

SO ORDERED.

                                           /s/ George Z. Singal
                                            United States District Judge

Dated this 24th day of September, 2013.