1.

```
 1
 2   SUPREME COURT OF THE STATE OF NEW YORK
 3   COUNTY OF NEW YORK- CIVIL TERM- PART 03
 4   ------------------------------------------X
     RICHARD DAVIMONS, JUNIOR
 5                        Plaintiff,
                                              Index No.
                                              11103/02
 6            -against-

 7   JOHN HALLE,

 8                        Defendant.
                                       ------------X
 9
     (BENCH TRIAL)
10                                   60 Centre Street
                                     New York, New York
11                                   November 26, 2007

12   B e f o r e :

13                       HONORABLE KARLA MOSKOWITZ,
                                Justice, Supreme Court.
14
     A P P E A R A N C E S:
15

16      REISS EISENPRESS, LLP
        Attorneys for the Plaintiff
17           425 Madison Avenue
             New York, New York
18      BY:  MATTHEW SHEPPE, ESQ.

19
        MARK F. SULLIVAN
20      Attorneys for the Defendant
             27 Front Street
21           Exeter, New Hampshire
        BY:  MARK F. SULLIVAN, ESQ.
22

23
                                     Lisa M. DeCrescenzo
24                                   Official Court Reporter

25

26
```

LISA DeCRESCENZO - OFFICIAL COURT REPORTER

EXHIBIT A

R. Davimos - Cross/Defendant

Q  No. No.

A  I'm going to tell you.

Q  I want to know where Henry Holmes was.

THE COURT: At what point in time?

Q  When did you hire Henry Holmes?

MR. SHEPPE: I'd like to make it clear we're not asking about privileged conversations my client has had with his prior attorney.

MR. SULLIVAN: I haven't asked one yet.

THE COURT: Could you answer that question, please?

A  Yes.

Q  When did you hire the attorney?

A  After that phone conversation with my father and he turned it over to John. John recommended my father should have somebody that understood movies.

Q  Now, Henry Holmes--

THE COURT: John meaning which John?

THE WITNESS: My brother. My brother produced two movies earlier.

Q  Your brother is fairly cognizant of this business?

A  Pretty what?

Q  Aware of this movie business?

A  He produced two movies. He didn't put money up.

LISA DeCRESCENZO - OFFICIAL COURT REPORTER

R. Davimos - Cross/Defendant

They went to TV. He had nothing to do with being released.

Q  Did you not -- just yes or no, was Henry-- did Henry Holmes represent you?

A  He represented-- realistically what he really did was looked over making sure that I got the certain things I wanted, the personal guarantees. That is the only thing I cared about.

Q  Let me ask you again, all right. It's an easy question. Yes or no, did Henry Holmes, the lawyer in California, right, did he represent you?

A  Yes.

Q  He represented you with regard to the documentation of this deal?

MR. SHEPPE:  Objection, Your Honor.

A  No.

Q  Correct?

MR. SHEPPE:  The scope of his relationship with Henry Holmes is a privileged matter, what they discussed, what they were talking about, what work he may have done for him.

MR. SULLIVAN:  I don't know how saying I represented somebody in a deal is getting--

MR. SHEPPE:  He just admitted he represented but you're asking what his--

49

R. Davimos - Cross/Defendant

1  THE COURT: I'll sustain. You're getting
2  into more than just--
3  MR. SULLIVAN: All right.
4  Q  Did you meet with attorney Holmes at any time?
5  MR. SHEPPE: Objection, Your Honor.
6  THE COURT: Meet or not meet. Just did you
7  meet or not meet at any time. Overruled.
8  A  No.
9  Q  You never met?
10 A  I never met Henry ever once. He lives in
11 California.
12 Q  Were you ever involved in a teleconference
13 meeting with Henry Holmes?
14 A  Possibly. I don't remember. This was nine years
15 ago.
16 Q  Well, is there something that can help you
17 remember?
18 A  You tell me. I really don't know. I barely ever
19 talked to Henry Holmes.
20 Q  But he was your lawyer?
21 A  Yes, he was my lawyer.
22 Q  Recommended by your brother?
23 A  Yes.
24 Q  Do you know if your lawyer discussed the
25 documents with attorney Michael, Michael Murphy?

LISA DeCRESCENZO - OFFICIAL COURT REPORTER

50

R. Davimos - Cross/Defendant

2  A  No.
3  Q  Did you ever see any of the documents that
4  involved this business deal?
5  A  No.
6  Q  So, how do you know what the terms of the deal
7  was?
8  A  I know exactly what John Halle told me.
9  Q  You new nothing else?
10 A  Nothing else.
11 Q  Nothing from your lawyer?
12 A  Nothing.
13 Q  Nothing?
14 A  Nothing.
15 Q  Nothing from Gerald Green?
16 A  Nothing.
17 Q  He didn't send you letters?
18 A  There were no letters that I would ever have seen
19 before I sent money regarding the terms of the deal.
20 Q  No documents you'd ever seen prior to giving
21 money?
22 A  Yes, that he sent to me.
23 Q  So, did you ever see the note, the guarantee or
24 the loan and security agreement prior to the deal?
25 A  I don't know.
26    THE WITNESS: Am I allowed to talk about my

LISA DeCRESCENZO - OFFICIAL COURT REPORTER

51

R. Davimos - Cross/Defendant

1
2  attorney?
3      MR. SHEPPE: Objection.
4      THE COURT: No, your present attorney is
5  saying no.
6      THE WITNESS: Okay.
7      Q  So, you're entering this deal where you're going
8  to pay a million dollars, loan a million dollars, correct?
9      A  I can't even hear you. Could you speak up?  I
10 have a little hearing loss.
11     Q  You're entering a deal where you're going to loan
12 somebody a million dollars?
13     A  I still can't hear you. Can you go back over to
14 here?
15     Q  Sure. You're in a deal that you're going to loan
16 someone a million dollars; is that correct?
17     A  Yes.
18     Q  You had a lawyer representing you in the deal,
19 correct?
20     A  Yes.
21     Q  You know that Gerald Green was involved in the
22 deal, correct?
23     A  Yes.
24     Q  You had discussions with Gerald Green about the
25 deal, correct?
26     A  Only at that luncheon meeting and maybe one other

LISA DeCRESCENZO - OFFICIAL COURT REPORTER